**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

CASE NO.:

PATRICK A. FORTE,

    Plaintiff,

-vs-

GOLDMAN SACHS BANK USA, and
EQUIFAX INFORMATION SERVICES, LLC,

    Defendants.
_____/

## COMPLAINT

### JURY DEMAND

Plaintiff, Patrick A. Forte ("Plaintiff"), alleges violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA"), against Defendants, Goldman Sachs Bank USA ("GS Bank") and Equifax Information Services, LLC ("Equifax") (collectively the "Defendants"), and states the following in support thereof:

### JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 15 U.S.C. § 1692k and 28 U.S.C. § 1331 because this action arises out of a federal statute.

2. This Court has personal jurisdiction because Defendants' conduct business throughout the State of Florida.

3. Defendants' voluntary contact with Plaintiff in Florida made it foreseeable that they would be hailed into a Florida court. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

4. Venue is proper because the alleged acts, omissions, and/or transactions complained of occurred here; Plaintiff lives here; and the Defendants conduct business here.

## PARTIES

5. Plaintiff is a natural person and, at all times relevant to this action, was a resident of the State of Florida.

6. GS Bank is a foreign profit corporation with its principal place of business located at 200 W Street, New York, NY 10282 and whose registered agent is CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324.

7. Equifax is a foreign limited liability company with its principal place of business located at 1550 Peachtree Street, NW H-46, Atlanta, GA 30309.

## LEGAL BACKGROUND

8. "Congress enacted the FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007) (citations omitted).

9. Congress found that "inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system." 15 U.S.C. § 1681(a)(1)

10. Congress also found that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and that "[t]here is a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(3), (4).

11. To further the FCRA's purpose, Congress requires "consumer reporting agencies [to] adopt reasonable procedures for meeting the needs of commerce for consumer credit,

personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b).

12. "The aim of the Fair Credit Reporting Act is to see that the credit reporting system serves the consumer as well as the industry. The consumer has a right to information which is accurate; he has a right to correct inaccurate or misleading information; he has a right to know when inaccurate information is entered into his file; he has a right to see that the information is kept confidential and is used for the purpose for which it is collected; and he has a right to be free from unwarranted invasions of his personal privacy. The Fair Credit Reporting Act seeks to secure these rights." *Hearings on S. 823 Before the Subcomm. on Financial Institutions of the S. Comm. on Banking and Currency*, 91st Cong. 2 (1969).

13. The FCRA requires credit reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of consumer reports." 15 U.S.C. § 1681e(b).

14. If a consumer disputes information contained in his or her credit report, the FCRA requires a credit reporting agency to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller." 15 U.S.C. § 1681i(a)(1)(A).

15. In performing the reinvestigation, the FCRA requires a credit reporting agency to "review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information." 15 U.S.C. § 1681i(a)(4).

16. If the disputed information is inaccurate or incomplete or cannot be verified, the

consumer reporting agency "shall (i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer." 15 U.S.C. § 1681i(a)(5)(A)(i), (ii).

17. If any disputed information is deleted because it is inaccurate or incomplete or cannot be verified and is deleted, the consumer reporting agency must comply with the certain requirements for certification by the furnisher of such information and for notification if the information is reinserted. 15 U.S.C. § 1681i(a)(5)(B)(i), (ii), and (ii).

18. Moreover, a consumer reporting agency must maintain reasonable procedures designed to prevent the reappearance in a consumer's file, and in consumer reports on the consumer, of information that is deleted unless the information is reinserted in compliance with the procedures for certification and notification. 15 U.S.C. § 1681i(a)(5)(C).

19. After a furnisher of information to a consumer reporting agency receives notice that the completeness or accuracy of information is disputed by a consumer, the furnisher must conduct a reinvestigation with respect to the disputed information, reviewing all relevant information. 15 U.S.C. § 1681s-2(b).

20. The FCRA provides a private right of action against any person that violates its provisions. 15 U.S.C. § 1681o, 1691n.

**FACTUAL BACKGROUND**

21. At all times relevant to the instant action, Plaintiff believes and therefore avers that his identity was stolen.

22. In or about August of 2020, while preparing for major surgery, Plaintiff received a notice from GS Bank regarding an Apple Card credit account (hereinafter the "Apple Card

Account") that was past due. (See **Exhibit 'A'**).

23. At all times relevant, Plaintiff never applied for, opened, authorized, approved, and/or used the Apple Card Account.

24. Plaintiff believes and therefore avers that the unknown individual(s) that stole his identity opened the Apple Card Account in Plaintiff's name and failed to make any payments on said account.

25. In response to the letter sent in relation to the Apple Card Account, Plaintiff contacted Apple and GS Bank by telephone, in attempts to correct the errors related to the Apple Card Account.

26. During the telephone calls, Plaintiff explained to one of the company representatives that he had no knowledge of ever establishing the Apple Card Account.

27. The representative explained to Plaintiff that the Apple Card Account had been charged $32.51 for the months of April, May, and June of 2020, and that those charges had not been paid.

28. The representative further explained to Plaintiff that the aforementioned charges had already been written off as "bad debt" and that information concerning the delinquency on the Apple Card Account had been sent to the credit reporting agencies by GS Bank.

29. Understandably dismayed by what he had learned, Plaintiff placed another call to GS Bank in a continued attempt to remedy the situation and to have the derogatory Apple Card Account expunged from all three of his consumer reports.

30. The representative explained to Plaintiff that nothing could be done about the derogatory credit reporting, but that he could mitigate the damage to his consumer reports by

making payment in full, which Plaintiff did.

31. On or about September 25, 2020, Plaintiff obtained copies of consumer reports maintained by the three major credit reporting agencies—Trans Union, Experian, Equifax.

32. Upon review of his consumer reports, Plaintiff confirmed that the Apple Card Account was being reported as delinquent (120+ days late) by all three of the credit reporting agencies.

33. When the delinquent status of the fraudulently opened Apple Card Account was placed on Plaintiff's consumer reports, it caused several issues to arise for Plaintiff.

34. Plaintiff confirmed that his credit scores had plummeted, as prior to the Apple Card Account being reported as delinquent his credit scores were above the 800 range; however, they were now in the 640 range.

35. Moreover, Plaintiff's credit accounts with American Express and Bank of America, one of which was opened in 1970, were both closed by the creditors because of the fraudulently opened Apple Card Account with a delinquent status on Plaintiff's consumer reports.

36. On or about September 30, 2020, Plaintiff filed a police report (Report No.: 2020-0014807) in reference to the inaccurate reporting of the Apple Card Account on his consumer reports.

37. On or about October 7, 2020, Plaintiff wrote, paid for, and sent letters to Trans Union, Experian, and Equifax, advising all three that he was the victim of identity theft. (See **Exhibit 'B'**).

38. In the aforementioned letters, Plaintiff included enough information to allow all three credit reporting agencies to identify him, including without limitation, his social security number, his date of birth, his cellular telephone number, and a copy of his Florida driver's license.

(See *Id.*).

39. Further, Plaintiff advised all three credit reporting agencies of his current address, his previous address, and that he had never lived in Munster, Indiana.

40. Plaintiff also requested that any inaccurate addresses be removed from his consumer reports, because including them in his credit profile may allow the identity theft to continue. (See *Id.*).

41. Lastly, Plaintiff requested that all three credit reporting agencies remove the fraudulently opened Apple Card Account from his consumer reports in its entirety. (See *Id.*).

42. Subsequent to sending the dispute letters to the credit reporting agencies, Plaintiff received a letter from GS Bank dated November 12, 2020. (See **Exhibit 'C'**).

43. In the November 12, 2020 letter, GS Bank stated, among other things, that they had sent a request to Trans Union, on Plaintiff's behalf, to have the inquiry and trade-line concerning the fraudulently opened Apple Card Account removed from Plaintiff's credit file. (See *Id.*).

44. Notably, the November 12, 2020 letter does not reference a request to have the inquiry and trade-line removed from Plaintiff's credit file maintained by Experian and Equifax, however, GS Bank was fully aware that the Apple Card Account was reported to both credit reporting agencies.

45. Plaintiff also received a letter from Trans Union dated November 13, 2020, which stated, among other things, that Trans Union had deleted the fraudulently opened Apple Card Account from Plaintiff's consumer report.

46. In the e-OSCAR system, if an account is modified or deleted through the ACDV process, "carbon copies" are sent to each credit reporting agency with whom the furnisher has a

reporting relationship.[1]

47. Although both Experian and Equifax were notified of changes to Plaintiff's credit file, Plaintiff did not receive a response to the dispute letters dated October 7, 2020, that he sent to them concerning the fraudulently opened Apple Card Account.

48. On or about December 16, 2020, Plaintiff again obtained copies of his consumer reports maintained by the three major credit reporting agencies—Trans Union, Experian, Equifax.

49. As represented in it's November 13, 2020 letter, Trans Union had deleted the fraudulently opened Apple Card Account from Plaintiff's consumer report.

50. Experian had also deleted the fraudulently opened Apple Card Account from Plaintiff's consumer report, although Plaintiff never received notification of the results of Experian's investigation.

51. Equifax, however, did not delete the fraudulently opened Apple Card Account from Plaintiff's consumer report and continues to report said account as delinquent, which severally damaged and continues to damage Plaintiff's credit score.

## COUNT I
### (Violation of 15 U.S.C. § 1681e(b) by Equifax)

52. Plaintiff realleges the foregoing paragraphs as if fully set forth herein.

53. At all times relevant, Plaintiff is and was a "consumer" as defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681a(c).

54. At all times relevant, Equifax is and was a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f) because it is regularly engaged in the business of assembling, evaluating,

---

[1] https://www.e-oscar.org/getting-started/about-us

and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties and disburses consumer reports under contract for monetary compensation.

55. 15 U.S.C. § 1681e(b) provides: "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

56. A consumer report must be (i) factually true and (ii) unlikely to lead to a misunderstanding by the intended user in order to comply with the maximum accuracy standard set forth under the FCRA. *See Erickson v. First Advantage Background Servs. Corp.*, 2020 U.S. App. LEXIS 37837 (11th Cir. 2020).

57. At all times relevant, Equifax assembled, prepared, and/or maintained consumer reports containing factually incorrect information related to Plaintiff.

58. At all times relevant, Equifax assembled, prepared, and/or maintained consumer reports containing information related to Plaintiff that was likely to lead to a misunderstanding by the intended user.

59. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of consumer reports containing information related to Plaintiff.

60. Specifically, after being notified of Plaintiff's disputes, Equifax prepared consumer reports stating, among other things, that Plaintiff opened, used, and failed to pay on the Apple Credit Account, when all of the aforementioned acts were actually done by an unknown third-party who had stolen Plaintiff's identity.

61. As a direct and proximate result of Equifax's acts and/or omissions, Plaintiff experienced injury, including without limitation, financial loss, loss of time addressing Equifax's

acts and/or omissions, loss of credit, loss of the ability to benefit from credit, and emotional distress.

62. Equifax's aforementioned conduct regarding Plaintiff was willful, rendering it liable for damages pursuant to 15 U.S.C. § 1681n.

63. In the alternative, Equifax's conduct regarding Plaintiff was negligent, rendering it liable for damages pursuant to 15 U.S.C. § 1681o.

64. Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Equifax for actual damages, statutory damages, attorney's fees, litigation expenses, costs of suit, and such further relief as the Court deems proper.

## COUNT II
### (Violation of 15 U.S.C. § 1681i by Equifax)

65. Plaintiff realleges the foregoing paragraphs as if fully set forth herein.

66. At all times relevant, Plaintiff is and was a "consumer" as defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681a(c).

67. At all times relevant, Equifax is and was a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f) because it is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties and disburses consumer reports under contract for monetary compensation.

68. Plaintiff sent a written dispute letter to all three major credit reporting agencies, including Equifax, concerning the fraudulently opened Apple Card Account and the incorrect addresses on his consumer reports.

69. Experian was notified of Plaintiff's disputes by the written letter sent on or about October 7, 2020 and/or the carbon copy ACDV form forwarded by other credit reporting agencies.

70. Section § 1681i(a) of the FCRA imposes "a duty ... to make reasonable efforts to investigate and correct inaccurate or incomplete information brought to its attention by the consumer." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991). "[T]he term 'investigation' is defined as '[a] detailed inquiry or systematic examination' or 'a searching inquiry.'" *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1303 (11th Cir. 2016) (citations omitted).

71. A credit reporting agency, such as Equifax, does not fulfill its responsibility to conduct a reinvestigation of a consumer's dispute by merely contacting the creditor who supplied the disputed account. *See Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1333 (11th Cir.), *on reh'g sub nom. Collins v. Equable Ascent Fin., LLC*, 781 F.3d 1270 (11th Cir. 2015).

72. After being notified of Plaintiff's disputes, Equifax violated 15 U.S.C. § 1681i by: (i) failing to conduct a lawful reinvestigation; (ii) failing to conduct any investigation at all; (iii) failing to delete inaccurate information in Plaintiff's credit file; (iv) failing to forward all relevant information the furnisher; (v) failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file; and/or (vi) relying upon verification from a source it has reason to know is unreliable.

73. Upon information and belief, Equifax does not perform that statutorily mandated FCRA investigation itself; instead, Equifax delegates all action in response to consumer disputes to a third-party outsource vendor located overseas previously known as Intelenet Global Services and now known as Teleperformance.

74. Teleperformance is not hired by Equifax to perform an actual FCRA investigation,

11

as its sole responsibility is to quickly read consumer dispute letters and then select one of a handful of common dispute codes from a drop-down menu.

75. Teleperformance agents are not permitted to contact the consumer, use the telephone to investigate, research the dispute, contact the furnisher directly, or take longer than 5 minutes per dispute.

76. Accordingly, Equifax did not conduct any reinvestigation of Plaintiff's disputes itself, as it merely caused the disputes to be removed from their control to be saved within a database by an overseas data processing vendor.

77. As a direct and proximate result of Equifax's acts and/or omissions, Plaintiff experienced injury, including without limitation, financial loss, loss of credit, loss of the ability to benefit from credit, and emotional distress.

78. Equifax's conduct regarding Plaintiff was willful, rendering it liable for damages pursuant to 15 U.S.C. § 1681n.

79. In the alternative, Equifax's conduct toward Plaintiff was negligent, rendering it liable for damages pursuant to 15 U.S.C. § 1681o.

80. Plaintiff is entitled to recover costs and attorney's fees from Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against Equifax for actual damages, statutory damages, attorney's fees, litigation expenses, costs of suit, and such further relief as the Court deems proper.

## COUNT III
**(Violation of 15 U.S.C. § 1681s-2(b) by GS Bank)**

78. Plaintiff realleges the foregoing paragraphs as if fully set forth herein.

79. At all times relevant, Plaintiff is and was a "consumer" as defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681a(c).

80. At all times relevant, GS Bank is and was a "furnisher" under the FCRA because it provides information concerning consumers to credit reporting agencies.

81. The FCRA provides: "[a] person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A).

82. Section 1681s-2(b) of the FCRA requires furnishers of credit information to investigate the accuracy of said information upon receiving notice of a dispute from a consumer reporting agency. 15 U.S.C. § 1681s-2(b).

83. A consumer has a private right of action against a furnisher of information under Section 1681s-2(b) when the furnisher, after receiving notice of a consumer's dispute, fails to conduct a reasonable investigation with respect to the disputed information, fails to review all relevant information, and/or fails to properly report the results of the investigation. *See* 15 U.S.C. § 1681s-2(b); *see also Peart v. Shippie*, 345 F. App'x 384, 386 (11th Cir. 2009).

84. Credit reporting agencies electronically send consumer disputes to furnishers, like GS Bank, using a form called an automated credit dispute verification (hereinafter "ACDV").

85. A furnisher who has received an ACDV is obligated to conduct a thorough investigation, which courts have defined in this context to mean "a careful" and "searching inquiry." *Brim v. Midland Credit Mgmt., Inc.*, 795 F. Supp. 2d 1255, 1269 (N.D. Ala. 2011). The furnisher must do more than just a superficial, perfunctory review of its own records to meet the statutory mandate.

86. "By its ordinary meaning, an [FCRA] 'investigation' requires an inquiry likely to

turn up information about the underlying facts and positions of the parties, not a cursory or sloppy review of the dispute." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1155–56 (9th Cir. 2009).

87. If a furnisher in receipt of an ACDV from a credit reporting agency discovers after its investigation that information is inaccurate, it must report those results to all other consumer reporting agencies to whom it has furnished information. *See* 15 U.S.C. § 1681s-2(b)(1)(D).

88. After being notified of Plaintiff's disputes, GS Bank violated 15 U.S.C. § 1681s-2(b), by: (i) failing to properly conduct an investigation into Plaintiff's disputes; (ii) failing to review all relevant information provided by Plaintiff regarding his disputes; (iii) failing to properly respond to Plaintiff's disputes; and/or (iv) failing to report the results of its investigation to all other consumer reporting agencies to whom GS Bank furnished information concerning Plaintiff.

89. As a direct and proximate result GS Bank's acts and/or omissions, Plaintiff experienced injury, including without limitation, financial loss, loss of credit, loss of the ability to benefit from credit, and emotional distress.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and against GS Bank for actual damages, statutory damages, attorney's fees, litigation expenses, costs of suit, and such further relief as the Court deems proper.

## JURY TRIAL DEMAND

Plaintiff respectfully requests trial by jury.

Respectfully submitted,

*/s/ Christopher Legg*
Christopher W. Legg, Esq.
Florida Bar No.: 44460
CHRISTOPHER W. LEGG, P.A.
499 E. Palmetto Park Rd., Ste. 228
Boca Raton, Florida 33432

Office: 954-962-2333
Chris@TheConsumerLawyers.com

*/s/ J. Dennis Card Jr.*
J. Dennis Card, Jr., Esq. (FL Bar No: 0487473)
E-mail: dennis@cloorg.com
CONSUMER LAW ORGANIZATION, P.A.
721 US Highway 1, Suite 201
North Palm Beach, Florida 33408
Telephone: (561) 822-3446
Facsimile: (305) 574-0132

*Attorneys for Plaintiff*